**Decio D'ANGIO, Plaintiff,**

v.

**BOROUGH OF NESCOPECK, et al., Defendants.**

No. 4:CV–98–1115.

United States District Court, M.D. Pennsylvania.

July 6, 1999.

Carl Max Janavitz, Warner Mariani, Pittsburgh, PA, for plaintiff.

Donald H. Brobst, Wilkes–Barre, PA, for defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On June 10, 1998, plaintiff Decio D'Angio commenced this action with the filing of a complaint alleging that the Public Indecency Ordinance ("the ordinance" or "Nescopeck ordinance") enacted by Nescopeck on May 11, 1998, violates (1) his freedom of speech under the United States and Pennsylvania Constitutions and (2) his rights under the Equal Protection provisions of both constitutions. By order dated January 29, 1999, this court granted defendants' motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6). This court declined to exercise supplemental jurisdiction over plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367(c)(1) and (3). Moreover, this court distinguished the decision in *Pap's A.M. v. City of Erie [Pap's II]*, 553 Pa. 348, 719 A.2d 273 (1998), wherein the Pennsylvania Supreme Court declined to follow the precedent set forth by the United States Supreme Court in *Barnes v. Glen Theatre, Inc., et al.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). On May 17, 1999, the United States Supreme Court granted certiorari

on the *Pap's II* decision. *See City of Erie v. Pap's A.M.,* —— U.S. ——, 119 S.Ct. 1753, 143 L.Ed.2d 786 (1999).

Presently before the court is plaintiff's motion for reconsideration of this court's order of January 29, 1999. For the reasons which follow, we will deny plaintiff's motion.

## DISCUSSION:

### I. STANDARD

#### 1. Motion For Reconsideration

■ The federal rules allow a party to move to alter or amend a judgment within ten (10) days of its entry. FED.R.CIV.P. 59(e). According to the Third Circuit, "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). However, where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration. *Id.* at 909 (citing *DeLong Corp. v. Raymond Int'l Inc.,* 622 F.2d 1135, 1139–40 (3d Cir.1980)). Accordingly, reconsideration motions will be granted only where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises. *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995). Reconsideration of judgment is an extraordinary remedy; therefore, such motions are to be granted sparingly. *NL Industries v. Commercial Union Ins.,* 935 F.Supp. 513 (D.N.J.1996) (citing *Maldonado v. Lucca,* 636 F.Supp. 621, 630 (D.N.J. 1986)).

### II. RECONSIDERATION IS NOT REARGUMENT

In order for plaintiff's motion to be granted, there must be an intervening change in the law, the availability of new evidence, or the need to correct a clear

error of law. Here, there has been no intervening change in the law. Moreover, plaintiff has not introduced any new evidence; indeed, no evidence has been introduced, as the Rule 12(b)(6) motion has been granted solely on the pleadings. Therefore, for the motion for reconsideration to be granted, plaintiff must satisfy the court that there is the need to correct a clear error of law.

It is under this third prong we analyze the merits of plaintiff's motion. However, we preface our opinion here with our belief that there is no clear error of law to correct. Indeed, plaintiff, proceeding under the direction of new counsel, now presents to the court arguments that were never meaningfully briefed in his opposition to defendants' motion to dismiss. As stated by our Chief Judge: " 'Judges are not like pigs, hunting for truffles buried in briefs.' ... A litigant who fails to press a point by supporting it with authority or by showing why it is a good point despite a lack of authority ... forfeits the point." *Grossman v. Jiminez,* No. 91–0423, slip op. at 5 (M.D.Pa.) issued April 17, 1991 (Rambo, C.J.) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)). It is somewhat audacious to ask the court to reconsider a decision because of a legal theory not properly presented for the court's initial consideration.

In the absence of the arguments now being presented in plaintiff's motion for reconsideration, we granted in part defendants' motion to dismiss based on *Barnes,* 501 U.S. at 560, 111 S.Ct. 2456, 115 L.Ed.2d 504. Indeed, despite the splintered opinions of the *Barnes* Court, five justices agreed, and the Court held, that the Indiana statute, as applied to prohibit nude dancing performed as entertainment, did not violate the First Amendment.[1] The *holding* is the supreme law of the land, binding upon this court and all other inferior courts.

---

1. We reiterate that plaintiff in his brief in opposition to defendants' motion to dismiss

conceded that the Nescopeck statute was identical to the Indiana statute.

Notwithstanding plaintiff's failure meaningfully to address in his initial brief the arguments he now presents for reconsideration, the court will now consider them in view of the significant constitutional issues. From his brief in support of the motion for reconsideration, we were able to ferret out two main arguments that were previously unaddressed. First, plaintiff contends that the court should have followed Justice Souter's concurring opinion, in accordance with *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). Second, plaintiff argues that the Nescopeck ordinance is unconstitutionally overbroad. We will now address these arguments *seriatim.*

### 1. Application of *Marks v. United States*

Plaintiff argues that Justice Souter's opinion in *Barnes* is the controlling holding since there is no majority opinion. *See* Plaintiff's Brief in Support of Motion For Reconsideration at 6. In support of his argument, plaintiff cites *Marks*, in which the United States Supreme Court held, "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those members who concurred in the judgments on the narrowest ground.'" *Marks*, 430 U.S. at 193, 97 S.Ct. 990 (citing *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Such jurisprudential gymnastics are necessary, however, only when the facts of the instant case vary materially from those of the cited authority, not the situation here.

Assuming *arguendo* Justice Souter's concurrence is the controlling holding, it still does not correct an error in the law. Justice Souter held that the state's interest supporting the statute was not society's moral views, but rather the interest in fighting the secondary effects of adult entertainment establishments. *Barnes*, 501 U.S. at 581, 111 S.Ct. 2456.

Justice Souter agreed with the plurality opinion that the test found in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)[2], should be applied in *Barnes*. *See Barnes*, 501 U.S. at 582, 111 S.Ct. 2456. This court applied the *O'Brien* test to the instant case. *See D'Angio v. Borough of Nescopeck*, 34 F.Supp.2d 256, 260 (M.D.Pa.1999). As discussed below, we reach the same conclusion with our application of the *O'Brien* test as Justice Souter.

According to Justice Souter, the first prong of the *O'Brien* test is satisfied by the state's prevention of secondary effects of adult entertainment establishments. *See Barnes*, 501 U.S. at 583, 111 S.Ct. 2456. Justice Souter stated "it is clear that the prevention of such evils falls within the constitutional power of the State". *Id.* While this court in *D'Angio* did not focus on the state's prevention of secondary effects of adult entertainment establishments in satisfying this first prong, we found that enacting such legislation "to provide for the public health, safety and morals" was indeed within the constitutional power of the government. *D'Angio*, 34 F.Supp.2d at 260–61. Under either analysis, the Nescopeck ordinance satisfies the first prong of the *O'Brien* test.

As to the second prong, Justice Souter concluded that the ordinance in *Barnes* furthered a substantial state interest. Moreover, Justice Souter cited *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986),

---

**2.** An ordinance passes muster under the *O'Brien* test:

(1) if it is within the constitutional power of the Government;

(2) if it furthers an important or substantial governmental interest;

(3) if the governmental interest is unrelated to the suppression of free expression; and

(4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673.

which held that a state need not justify the harmful secondary effects, but may rely on other states' experiences. " 'Renton was entitled to rely on the experiences of Seattle and other cities' [citations omitted] which demonstrated the harmful secondary effects correlated with the presence 'of even one [adult] theater in a given neighborhood.'" *Barnes*, 501 U.S. at 584, 111 S.Ct. 2456 (quoting *Renton*, 475 U.S. at 50, 106 S.Ct. 925).

Here, plaintiff contends that "the Borough of Nescopeck is constitutionally required to offer record support both for the existence of adverse secondary effects and for the causal link as to how the enacted Ordinance will ameliorate the harm of public nudity." *See* Plaintiff's Brief in Support of Motion For Reconsideration at 14. However, this position is contrary to Justice Souter's opinion. As previously stated, Justice Souter concluded that a state need not justify the harmful secondary effects of adult entertainment establishments.

As to the third prong, Justice Souter found that the "government interest in combating prostitution and other criminal activity [was] not at all inherently related to expression." *Barnes*, 501 U.S. at 585, 111 S.Ct. 2456. We agree with Justice Souter. As stated by this court in *D'Angio*, "[i]t is not the dancing per se the Ordinance seeks to prohibit, but simply its being done in the nude." *D'Angio*, 34 F.Supp.2d at 260–61.

Finally, as to the last prong, Justice Souter concluded that mandating dancers to wear pasties and G-strings was an incidental restriction on expression. *Barnes*, 501 U.S. at 587, 111 S.Ct. 2456. Similarly, we found the ordinance in our case, as applied to prohibit nude dancing, to be an incidental restriction in furtherance of the state interest. *D'Angio*, 34 F.Supp.2d at 260–61.

In sum, even if we apply Justice Souter's analysis to the Nescopeck ordinance, we reach the same conclusion as we did previously. Accordingly, the ordinance would still pass muster within the framework of Justice Souter's opinion.

## 2. Constitutional Overbreadth Doctrine

Plaintiff also argues that the Borough's ordinance is unconstitutionally overbroad. Although plaintiff cites to a number of cases in support of this argument, we note that none is binding on this court. Nevertheless, plaintiff appears to be making a plea for stage productions such as "Hair" and "Equus," which presumably involve nude performances. It is plaintiff's contention that these theatrical productions would be illegal in Nescopeck because of the ordinance's prohibition of live nudity. Thus, plaintiff argues that the statute is unconstitutionally overbroad. We disagree.

■ The United States Supreme Court in *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), set the standard for determining whether a statute or ordinance is unconstitutionally overbroad. The Court held:

But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' towards conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a state from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. *Alderman v. United*

*States*, 394 U.S. 165, 174–175, 89 S.Ct. 961, 22 L.Ed.2d 176, (1969) ... To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. It is our view ... that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied. *Broadrick*, 413 U.S. at 615–616, 93 S.Ct. 2908. In addition, the Court stated that the overbreadth doctrine should be used sparingly. *Id.* at 613, 93 S.Ct. 2908. Moreover, "[f]acial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Id.*

Furthermore, in *J & B Entertainment, Inc. v. City of Jackson, Mississippi*, 152 F.3d 362, 367 (5th Cir.1998), the court held that the alleged overbreadth of the ordinance in question, when compared to its plainly legitimate sweep, was neither real nor substantial. The Fifth Circuit stated, "although hypothetical examples in which the Ordinance may be overbroad can be imagined, these examples, in comparison to its legitimate sweep, are not substantial". *J & B Entertainment*, 152 F.3d at 367 (citing *Broadrick*, 413 U.S. at 615, 93 S.Ct. 2908). In addition, since the ordinance was not substantially overbroad, the court determined that "any remaining ambiguities can be clarified in future cases." *J & B Entertainment*, 152 F.3d at 367 (citing *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 61, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908).

▮ In light of the above, we find that even if a production such as "Hair" came to the Borough of Nescopeck, it would demand a case-by-case analysis to determine the application of the ordinance and the constitutionality of that application. Unlike the ordinance in *J & B Entertain-*

*ment*, the Nescopeck ordinance does not contain any "artistic" exception to the public nudity clause. Nevertheless, according to the United States Supreme Court, "particularly where conduct and not merely speech is involved," *Broadrick*, 413 U.S. at 615, 93 S.Ct. 2908, facial overbreadth should not be invoked, since a limiting construction can be placed on the challenged ordinance if and when the occasion arises.

▮ We agree with the court in *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 136 (6th Cir.1994), that federal courts are unable to rewrite state statutes or local ordinances to supply limiting constructions to preserve their constitutionality. On the other hand, we disagree with the *Triplett* court's conclusion that, because no limiting construction had been put on the ordinance by the enacting body or any state court, the ordinance must be found unconstitutionally overbroad. The Supreme Court in *Broadrick*, as we earlier related, states that "facial overbreadth has not been invoked when a limiting construction has been or *could be* placed on the challenged statute." *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908. (Emphasis supplied). We believe a limiting construction *can be* placed on the Nescopeck ordinance if and when necessary. To paraphrase *Broadrick*, we do not believe the Nescopeck ordinance must be discarded in toto because some persons' arguably protected conduct may or may not be caught or chilled by the ordinance. *Id.* at 618, 93 S.Ct. 2908. Any ambiguities in the ordinance can be and should be decided on a case-by-case basis.

Accordingly, we do not find the Nescopeck ordinance to be facially unconstitutional under the First Amendment overbreadth doctrine.

### III. CONCLUSION

Based on the foregoing, and upon reconsideration of our dismissal order of January 29, 1999, we conclude that the Nescopeck ordinance does not violate the First

Amendment, either as applied to prohibit nude dancing performed as entertainment or as facially overbroad. Accordingly, although we have indeed reconsidered the matter, we will deny plaintiff's motion for reconsideration on the merits.

An appropriate order will issue.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. Plaintiff Decio D'Angio's Motion for Reconsideration (record document no. 14) is denied.

2. The court's order of January 29, 1999 is reconfirmed.