Decio D'ANGIO, Plaintiff,

v.

BOROUGH OF NESCOPECK,
et al., Defendants.

Nos. 98–CV–1115, 98–CV–1116.

United States District Court,
M.D. Pennsylvania.

Jan. 29, 1999.

**257**

*MEMORANDUM*

MCCLURE, District Judge.

*BACKGROUND:*

On June 10, 1998, plaintiff D'Angio, individually and d/b/a Sammy's Hide-a-way Lounge, commenced these two actions in the Court of Common Pleas of Luzerne County. Both actions were removed to this court on June 23, 1998.[1]

Although both actions recite a common set of facts and involve common questions of law, no party has filed a motion to consolidate. Instead, the parties have filed duplicative motions, briefs and affidavits in each case. The court finds consolidation clearly appropriate, and therefore, under and pursuant to Fed.R.Civ.P. 42(a), will now order their consolidation. As the initiating document in No. 98–1115 was in the form of a detailed complaint and the initiating document in No. 98–1116 was in the form of a more limited "Appeal," the surviving case will be No. 98–1115, and in this memorandum and the ensuing order, we will refer to the complaint filed in No. 98–1115.

Plaintiff owns and operates Sammy's Hide-a-way Lounge, an adult entertainment establishment that features totally nude dancers. In his complaint, plaintiff seeks a judgment declaring that the Public Indecency Ordinance enacted by Nescopeck on May 11, 1998, violates (1) his freedom of speech under the United States and Pennsylvania Constitutions because the ordinance prohibits public nudity and therefore prohibits dancers from performing totally nude at his place of business, and (2) his rights under the Equal Protection provisions of both constitutions.

Presently before the court is defendants' motion to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6), (record document no. 2), filed July 17, 1998. For the reasons which follow, we will grant in part defendants' motion.

*STANDARD:*

A motion to dismiss under FED. R. CIV. P. 12(b)(6) admits the well-pleaded allegations

Franklin E. Kepner, Kepner, Kepner & Corba, P.C., Berwick, PA, for plaintiff.

Donald H. Brobst, Wilkes–Barre, PA, for defendants.

1. Counsel for plaintiff has voluntarily withdrawn any action against the Mayor and Members of Nescopeck Borough Council. *See* Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss at 12.

of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). The complaint must be construed in favor of the plaintiff with every doubt resolved in the plaintiff's favor. *In re Arthur Treacher's Franchise Litigation,* 92 F.R.D. 398, 422 (E.D.Pa.1981). That is, the court must accept as true all factual allegations set forth in the complaint as well as all reasonable inferences that can be drawn from them. *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The court looks only to the facts alleged in the complaint and any attachments, without reference to any other parts of the record. *Jordan* at 1261. "[A] case should not be dismissed unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.* (citing, *inter alia, Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

## DISCUSSION:

Plaintiff's complaint alleges that Ordinance No. 434, An Ordinance of the Borough of Nescopeck to Prohibit Public Indecency (the "Ordinance" or the "Nescopeck ordinance"), violates plaintiff's civil rights guaranteed under the United States and Pennsylvania Constitutions. Specifically, plaintiff complains of Sections 1 and 2 of the Ordinance, which state:

> Sec. 1. The Borough Council hereby declares the following conduct to be illegal as hereinafter set forth, and further, that such activities are hereby declared to be and constitute public indecency.
>
> Sec.2.(a) A person who knowingly or intentionally, in a public place:
>
> (1) engages in sexual intercourse;
>
> (2) engages in deviate sexual conduct;
>
> (3) *appears in a state of nudity;* or
>
> (4) fondles the genitals of himself or another person.
>
> (b) 'Nudity' means the showing of human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple or the showing of covered male genitals in a discernibly turgid state.

Ordinance No. 434 at ¶¶ 1–2(a), (b) (emphasis added) (Complaint, Exh. A).

For the reasons which follow, we find that the Ordinance does not violate plaintiff's rights under the United States Constitution. We conclude that *Barnes v. Glen Theatre, Inc., et al.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), is binding precedent on the First Amendment free speech issue raised by plaintiff, despite the recent decision to the contrary rendered by the Pennsylvania Supreme Court in *Pap's A.M. v. City of Erie* [*Pap's II*], 553 Pa. 348, 719 A.2d 273 (1998), a strikingly similar case. Moreover, we find the equal protection argument to be without merit. Finally with respect to the Pennsylvania constitutional claims, we will decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(1) and (3), as the free speech claim, at least, raises a complex issue of state law, and the court is dismissing all claims over which it had original jurisdiction.

Therefore, we will grant in part defendants' motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

## A. First Amendment—Freedom of Speech

We will now address the alleged violation of plaintiff's rights under the First Amendment to the United States Constitution in light of *Barnes*. We do not believe that the Ordinance in any way violates plaintiff's federally guaranteed rights. Defendants cite *Barnes* in support of their argument that the Ordinance is within the ambit of the state's police power and unrelated to the suppression of the freedom of expression guaranteed by the First Amendment. We agree with defendants.

In *Barnes*, five members of the Supreme Court agreed that an Indiana statute prohibiting public nudity, as applied to nude dancing performed as entertainment, did not

violate the First Amendment.[2] That case involved two Indiana establishments (the respondents) that wished to provide totally nude dancing as entertainment. The respondents sought to enjoin enforcement of Indiana's state public indecency law, which in pertinent part, provided as follows:

Sec.1.(a) A person who knowingly or intentionally, in a public place:

(1) engages in sexual intercourse;

(2) engages in deviate sexual conduct;

(3) appears in a state of nudity; or

(4) fondles the genitals of himself or another person; commits public indecency, a Class A misdemeanor.

(b) 'Nudity' means the showing of the human male or female genitals, public area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of the covered male genitals in a discernibly turgid state.

*Id.* at 569, n. 2, 111 S.Ct. 2456 (quoting IND. CODE § 35-45-4-1 (1988)).

The effect of the statute was to require female dancers to wear no less than "pasties" and a "G-string" while performing in public. The respondents contended that the statute violated their freedom of expression guaranteed by the First Amendment to the United States Constitution. *Id.* at 563, 111 S.Ct. 2456. Chief Justice Rehnquist, joined by Justices O'Connor and Kennedy (the Rehnquist plurality) first determined that nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment. *Id.* at 565, 111 S.Ct. 2456 (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975)).[3]

Next, the Rehnquist plurality proceeded to determine the level of protection to be afforded to the expressive conduct at issue. They turned to the Supreme Court's analysis in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), a case involving the burning of a draft card on the steps of a South Boston Courthouse. In that case, O'Brien was convicted of violating an amendment to a statute that prohibited the knowing destruction or mutilation of draft cards. *O'Brien*, 391 U.S. at 376, 88 S.Ct. 1673. O'Brien contended (1) that the amendment was unconstitutional in its application to him because his act of burning his registration certificate was protected "symbolic speech" within the First Amendment, and (2) that the amendment was unconstitutional because it was enacted to abridge free speech and served no legitimate legislative purpose. *Id.*

As to O'Brien's first argument, the Supreme Court stated:

when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong.

*Id.* at 376-77, 88 S.Ct. 1673 (citations omitted). Further, in *O'Brien* the Court espoused the following four-prong test for determining whether a government regulation is "sufficiently justified":

if it is within the constitutional power of the Government;

(1) if it is within the constitutional power of the Government;

---

**2.** A majority of the Supreme Court was unable to agree on an opinion; however, we believe the plurality opinion expressed by Chief Justice Rehnquist and joined by Justice O'Connor and Justice Kennedy is the most instructive analysis of the First Amendment freedom of expression issue presented in *Barnes* as well as the case at bar.

Justice ·Souter and Justice Scalia concurred separately. Justice White wrote the dissent, in which Justice Marshall, Justice Blackmun and Justice Stevens joined.

**3.** Justice Scalia was the only member of the Court to express the view that the statute, "as a general law regulating conduct and not specifically directed at expression...[was] not subject to First Amendment scrutiny at all." *Barnes*, 501 U.S. at 572, 111 S.Ct. 2456.

(2) if it furthers an important or substantial governmental interest;

(3) if the governmental interest is unrelated to the suppression of free expression; and

(4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377, 88 S.Ct. 1673.

Applying this test to the statute in *O'Brien*, the Court concluded that all four requirements were met and that O'Brien could be constitutionally convicted for violating the statute. *O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673. The Supreme Court stated:

In conclusion, we find that because of the Government's substantial interest in assuring the continuing availability of issued Selective Service certificates, because [the amendment] is an appropriately narrow means of protecting this interest and condemns only the independent noncommunicative impact ·of conduct within its reach, and because the noncommunicative impact of O'Brien's act of burning his registration certificate frustrated the Government's interest, a sufficient governmental interest has been shown to justify O'Brien's conviction.

*Id.* at 382, 88 S.Ct. 1673.

The Rehnquist plurality also applied this four-prong test in *Barnes* to determined whether the Indiana public indecency statute was justified. They concluded:

[W]e find that Indiana's public indecency statute is justified despite its incidental limitations on some expressive activity. The public indecency statute is clearly within the constitutional power of the State and furthers substantial governmental interests ... the statute's *purpose of protecting societal order and morality is clear from its text and history. Public indecency statutes of this sort are of ancient origin and presently exist in at least 47 States ... Public indecency statutes such as the one before us reflect moral disapproval of people appearing in the nude among strangers in public places.*

*Barnes*, 501 U.S. at 567–568, 111 S.Ct. 2456 (emphasis added). Moreover, the Rehnquist plurality reiterated that enacting such public indecency statutes falls within the purview of the states' police power. "This and other public indecency statutes were designed to protect morals and public order. *The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals, and we have upheld such a basis for legislation.*" *Id.* at 569, 111 S.Ct. 2456 (citing *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) (emphasis added)). Along this same vein, the Supreme Court in *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), stated, "The law, however, is constantly based on notions of morality, and if all laws representing essentially moral choices are to be invalidated under the Due Process Clause, the courts will be very busy indeed." *Bowers*, 478 U.S. at 196, 106 S.Ct. 2841.

Moreover, the Supreme Court in *O'Brien* reiterated a well-settled principle of constitutional law, "that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *O'Brien*, 391 U.S. at 383, 88 S.Ct. 1673. In that case, O'Brien's second contention (that the amendment was unconstitutional because it was enacted to abridge free speech and it served no legitimate legislative purpose) was rejected by the Supreme Court on the basis that the statute was otherwise constitutional. The Court stated: "Inquiries into congressional motives or purposes are a hazardous matter." *Id.*

Examining the facts of the case at bar, it is clear that the rationale of the Rehnquist plurality in *Barnes* and the Court in *O'Brien* is controlling with respect to the First Amendment issue. The public indecency statute in *Barnes* and the Nescopeck ordinance are identical in language; in fact, plaintiff concedes this fact in his brief in opposition to defendants' motion to dismiss. *See* Plaintiff's Brief in Opposition at 5. Moreover, the plaintiffs in *Barnes* and in our case are nude dancing establishments seeking to enjoin enforcement of the statute or ordinance. After a view of the well-settled principles espoused by the Supreme Court, we conclude that the

public indecency ordinance enacted by Nescopeck does not violate the First Amendment. For the reasons which follow, we find that in applying the *O'Brien* four-prong test to the facts in our case, the Ordinance is "sufficiently justified."

First, enacting legislation to provide for the public health, safety and morals is clearly within the state's traditional police power. *See Barnes,* 501 U.S. at 569, 111 S.Ct. 2456. Therefore, the enactment of the Ordinance is within the constitutional power of the government.

Second, we find that the Ordinance furthers an important or substantial governmental interest. Plaintiff argues that "the purpose of Nescopeck Borough in passing this Ordinance is not clear." *See* Plaintiff's Brief in Opposition at 6. We disagree. It may be inferred that the purpose of the Ordinance is to protect societal order and morality, in accordance with other public indecency statutes that have been enacted in the past.[4] Moreover, the Rehnquist plurality in *Barnes* found that such was the purpose of Indiana's statute, despite that state's lack of legislative history and the lack of additional direction from the state's supreme court. *See Barnes,* 501 U.S. at 567–68, 111 S.Ct. 2456.

Third, we find that this governmental interest is unrelated to the suppression of free expression. Indeed, the Ordinance's effect of having dancers wear G-strings and pasties "does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic ... Public nudity is the evil the State seeks to prevent, whether or not it is combined with expressive activity." *Barnes,* 501 U.S. at 571, 111 S.Ct. 2456. It is not the dancing *per se* that the Ordinance seeks to prohibit, but simply its being done in the nude.

Lastly, we find that the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the further-

ance of the governmental interest in preventing public nudity. Again, the interest the Borough of Nescopeck seeks to protect is the societal disapproval of nudity in public places and among strangers. "The statutory prohibition is not a means to some greater end, but an end to itself." *Barnes,* 501 U.S. at 572, 111 S.Ct. 2456. Clearly, the requirement of wearing pasties and G-strings "is the bare minimum necessary to achieve the State's purpose." *Id.*

Therefore, we conclude that the Ordinance passes muster under the *O'Brien* four-prong test, and that its enactment does not violate plaintiff's right to freedom of expression guaranteed by the First Amendment.

Furthermore, regardless of the rationales variously expressed in the opinions of the Rehnquist plurality, Justice Scalia and Justice Souter in *Barnes,* this court is bound by the *decision* of the five justices upholding the constitutionality of the Indiana statute, identical in all material respects to the Nescopeck ordinance.

### Recent Pennsylvania Supreme Court Decision in *Pap's A.M. v. City of Erie*

Defendants in our case filed their motion to dismiss on July 17, 1998. In *Pap's A.M. v. City of Erie,* 674 A.2d 338 (Pa.Commw.1996) (*Pap's I*), the Pennsylvania Commonwealth Court on March 27, 1996, determined that a public indecency ordinance nearly identical to the one in our case passed muster under the United States and Pennsylvania Constitutions. *Id.,* 674 A.2d at 338. However, at the time the present motion to dismiss was filed, a Petition for Allowance of Appeal had been granted by the Pennsylvania Supreme Court and the state's highest court had not yet rendered its decision.

On October 14, 1998, the Pennsylvania Supreme Court reversed the Pennsylvania Commonwealth Court and held that the pub-

---

4. There is no reasonable basis whatsoever to infer an intent to prohibit erotic dancing. At the time of the enactment of the public indecency ordinance there was in full force and effect in Nescopeck a zoning ordinance expressly permitting adult entertainment establishments, including adult cabarets, as conditional uses in a Com-

mercial District. An "adult cabaret" is defined in the zoning ordinance as: "A cabaret which features go-go dancers, exotic dancers, strippers, male and female impersonators, or similar entertainers and which excludes minors by virtue of age." Complaint, 7–8; Affidavit of Franklin E. Kepner, Jr.

lic nudity sections of Erie's ordinance violated the plaintiff's First Amendment free speech guarantee, and that severance of public nudity sections from the ordinance was appropriate. *Pap's II*, 719 A.2d at 274. In so doing, the Pennsylvania Supreme Court found no binding precedent in *Barnes*, due to the split opinions. The Pennsylvania Supreme Court then expressly declined to render a decision on the constitutionality of the ordinance under Article I, § 7 of the Pennsylvania Constitution. *Id.* at 281, n. 12.

In view of the foregoing, we believe a brief discussion of the recent Pennsylvania Supreme Court decision is appropriate, if only to shed further light on the rationale behind the decision we render today.

The facts in *Pap's* are strikingly similar to those in our case as well as in *Barnes*. In *Pap's*, an operator of a nude dancing establishment brought an action challenging the constitutionality of Erie's public indecency ordinance proscribing nudity in public places. The ordinance in *Pap's* is nearly identical to the one in *Barnes*, as well as in the case at bar. However, one significant difference exists in the ordinance found in *Pap's:* it contained the following language which expressed the reason for enacting the ordinance:

> for the purpose of limiting a recent increase in nude live entertainment within the City, which activity adversely impacts and threatens to impact on the public health, safety and welfare by providing an atmosphere conducive to violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases and other deleterious effects.

*Id.* at 279.

The statute in *Barnes* and the ordinance in our case contained no such preamble. In fact, the Rehnquist plurality in *Barnes* looked to past public indecency statutes to infer the Indiana ordinance's purpose of protecting societal order and morality. Indeed, no language aimed expressly at nude dancing exists either in the statute in *Barnes* or the ordinance in our case.

We find no need to engage here in a detailed analysis of the rationale employed

by the Pennsylvania Supreme Court in *Pap's II*, in declaring that the Erie ordinance violates the First Amendment. Suffice it to say that the court found that the stated purpose of the ordinance was "inextricably linked with the content-based motivation to suppress the expressive nature of nude dancing," *Id.*, at 279, and that the "strict scrutiny" test therefore applicable could not be satisfied.

In reviewing the Nescopeck ordinance, which contains no language in a preamble or elsewhere directed at curbing erotic dancing, we find the reasoning of the Rehnquist plurality in *Barnes* most convincing, and more importantly, consider the decision in *Barnes* determinative of our case.

Justice Castille's view, as expressed in his concurring opinion in *Pap's II*, although not accepted by that court's majority, is a clear expression of our view in this case:

> I believe that the majority herein strains to find discord in *Barnes* where none exists.
>
> \* \* \* \* \* \*
>
> My disagreement with the majority centers on the fact that five Justices, and thus a majority, voted to uphold the ordinance in *Barnes* on the basis that the ordinance at issue in *Barnes* could *not* be characterized as relating to the suppression of free expression for purposes of the First Amendment. Therefore, a five-Justice *majority* declined to apply the strict scrutiny test.

*Pap's II*, 719 A.2d at 282.

### B. Equal Protection—Fourteenth Amendment

 Plaintiff further alleges that the Nescopeck ordinance violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *See* Plaintiff's Brief at 9. In support of his argument, plaintiff contends that the Nescopeck ordinance "unlawfully discriminate[s] against nude dancing establishments while allowing other types of much more graphic adult entertainment." *Id.* These adult entertainment businesses include adult bookstores, adult cabarets, adult drive-in theaters, adult mas-

sage parlors, adult mini-motion pictures theaters, adult motion pictures theaters and adult videocassette rentals. *See id.*

We disagree with plaintiff that the Nescopeck ordinance violates the Equal Protection Clause of the Fourteenth Amendment. In *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the Supreme Court stated:

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.

> \*　　\*　　\*　　\*　　\*　　\*

> *The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude* and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process.

*City of Cleburne, Texas*, 473 U.S. at 439–40, 105 S.Ct. 3249 (emphasis added). The Court went on to state that "[o]nly when a statute classifies through the use of impermissible factors, such as race, alienage, national origin or gender, or impinges on fundamental rights, is a heightened standard of review applied." *Id.* at 440, 105 S.Ct. 3249.

█ By making an Equal Protection claim, plaintiff essentially is asking the court to throw nude individuals into a suspect classification, or quasi-suspect classification. Such

classifications are those that "almost always serve no legitimate governmental purpose or ... impact a group traditionally politically unable to protect itself." *See Philadelphia Police and Fire Ass'n For Handicapped Children, Inc. v. City of Philadelphia*, 874 F.2d 156, 162–63 (3d Cir.1989)[5] (citing *Plyler v. Doe*, 457 U.S. 202, 216–17, n. 14, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). "These suspect or quasi-suspect classifications, however, represent a very limited exception to the general rule." *Philadelphia Police*, 874 F.2d at 163. As previously stated, such classifications trigger courts to apply strict scrutiny to such laws. *See id.*

Here, the Nescopeck ordinance does not involve any discernible fundamental rights and does not affect with particularity any protected class. The Ordinance classifies on the basis of public nudity, which is not one of the stated factors such as race, alienage, national origin, or gender, that triggers a suspect or quasi-suspect classification. Indeed, plaintiff has cited no authority for the proposition that nude individuals comprise a suspect or quasi-suspect classification which requires a court to apply a heightened standard of review. We decline to do so here.

█ Thus, the test is whether the Ordinance has a rational relationship to a legitimate state interest. *Western & S. Life Ins. Co.*, 451 U.S. 648, 656–57, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). There is a presumption in favor of the state's action in cases involving social or economic legislation. *See Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988). "This presumption imposes upon plaintiffs the heavy burden of making a 'clear showing of the arbitrariness and irrationality' in order to upset legislation." *Philadelphia Police*,

---

**5.** We note that plaintiff cites in his brief the district court's decision in *Philadelphia Police & Fire Ass'n v. City of Philadelphia*, 699 F.Supp. 1106 (E.D.Pa.1988), wherein the court held that denial of benefits to retarded persons living at home violated equal protection rights and substantive due process rights. The district court, while agreeing that the mentally retarded do not fall within a suspect class or quasi-suspect class, applied the rational basis test and held that "the denial of services to the members of the plaintiff class [does not further] any substantial state interest." *Philadelphia Police*, 699 F.Supp. at

1114. In plaintiff D'Angio's brief, he fails to note that on appeal, the Third Circuit reversed the district court's decision in *Philadelphia Police. See Philadelphia Police*, 874 F.2d at 156. In doing so, the court stated that "the district court overstepped these bounds when it held the cutbacks arbitrary and irrational." *Id.* at 163. "[I]t cannot be said that Philadelphia's decision to limit cuts to those mentally retarded receiving services at home is 'wholly irrelevant to the achievement of the State's objective' of reducing expenditures with minimal disruption to the system." *Id.*

874 F.2d at 163 (citing *Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981)). Along this same vein, a statutory classification violates the equal protection clause "only if the statute's classification rests on grounds wholly irrelevant to the achievement of the State's objective." *Kadrmas,* 487 U.S. at 462, 108 S.Ct. 2481 (quoting *Holt Civic Club v. Tuscaloosa,* 439 U.S. 60, 71, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978) (quoting, *inter alia, McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961))).

We have determined previously that the Nescopeck ordinance was enacted to ensure the health, safety and welfare of Nescopeck's population, which is a legitimate state interest. Banning live public nudity is rationally related to this stated purpose. We cannot find that the Ordinance's classification rests on grounds "wholly irrelevant to the achievement of the State's objective." *Kadrmas,* 487 U.S. at 462, 108 S.Ct. 2481. Indeed, the rational basis test places upon plaintiff a heavy burden and he has failed to satisfy it here. Therefore, we find that the Nescopeck Ordinance does not violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

### C. State Constitutional Claims

■ Plaintiff also contends that the Ordinance violates the Pennsylvania Constitution. However, for the reasons which follow, we decline to exercise supplemental jurisdiction over plaintiff's state law claims

The Pennsylvania Supreme Court in *Pap's II* struck down the ordinance under the First Amendment to the United States Constitution, but it found no need to determine whether it violated the free speech provision of the Pennsylvania Constitution. In a footnote, Justice Cappy states:

As we have determined that the Ordinance violates Appellant's freedom of expression guaranteed by the United States Constitution, there is no need for us to determine whether the comparable provision found in Article I, § 7 of the Pennsylvania Constitution is also violated.

*Pap's II,* 719 A.2d at 281, n. 12.

Thus, we are left only with the decision from the Pennsylvania Commonwealth Court in *Pap's I,* whereby the court upheld the ordinance under the Pennsylvania Constitution.

Therefore, in the face of silence from the Pennsylvania Supreme Court, we decline to hear plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367(c)(1) and (3). As a starting point, in any civil action of which a district court has original jurisdiction, 28 U.S.C. § 1367 provides for a district court's supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Therefore, since this court has original jurisdiction over plaintiff's federal constitutional claims, plaintiff's state constitutional claims are properly before us.

However, a district court may decline to exercise supplemental jurisdiction over any claim under 28 U.S.C. § 1367(a) if one of the following situations exists:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).

Here, we believe that plaintiff's state constitutional claims raise a complex issue of state law, at least with respect to the free speech issue. Indeed, since the Pennsylvania Supreme Court expressly declined to address its own constitution in its opinion in *Pap's II,* we are left confronted with the task of predicting how the state's highest court would have ruled on the matter. We decline to take on that task in light of the ramifications such a decision would have on Pennsylvania's constitution and its citizens. Accordingly, we

decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(1).

Moreover, a district court may decline to exercise supplemental jurisdiction over a state claim if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Here, we are dismissing plaintiff's federal constitutional claims and, accordingly, decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

### D. Remaining Argument

We mentioned previously that plaintiff filed two actions, one being in the form of an Appeal and the other in the form of a Complaint. We note here the only claim plaintiff avers in the Appeal which is not found in the Complaint:

> 15. The Petitioner believes and therefore avers that the Ordinance enacted on or about May 11, 1998, was enacted improperly, including procedural irregularities, the manner of passage, artifice, misunderstanding and mistake and is therefore invalid.

Appeal at ¶ 15.

■ We find no need to address the merits of this argument as plaintiff failed to address it in his brief in opposition to defendants' motion to dismiss. *See* LR 7.6 of the Local Rules for the Middle District of Pennsylvania. Accordingly, plaintiff has waived this argument for purposes of deciding the motion before us.

### CONCLUSION:

We hold that the Ordinance does not violate the freedom of expression guarantee of the First Amendment of the United States Constitution, in accordance with the United States Supreme Court's decision in *Barnes*. Moreover, we find that the Ordinance does not violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

Further, we decline to exercise supplemental jurisdiction over plaintiff's state constitutional claims and therefore do not reach the merits of whether the Ordinance violates the free speech and equal protection provisions of the Pennsylvania Constitution—Article I, § 7 and Article I, §§ 26 and 28, respectively.

The consolidated case will therefore be remanded to the Court of Common Pleas of Luzerne County, Pennsylvania.

An appropriate order will issue.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The cases docketed to No. 98–CV–1115 and No. 98–CV–1116 are consolidated for all purposes, with No. 98–CV–1115 as the surviving case.

2. Defendants' motion to dismiss (record document no. 2) is granted, with prejudice, as to plaintiff's federal constitutional claims.

3. We decline to exercise supplemental jurisdiction over plaintiff's state constitutional claims pursuant to 28 U.S.C. §§ 1367(c)(1) and (3).

4. The consolidated case is remanded to the Court of Common Pleas of Luzerne County, Pennsylvania.

5. The clerk is directed to close the file.