JAY–LEE, INC. and Four G. Corp.,
Inc. and Jules Greenberg,
Individually, Appellants,

v.

The MUNICIPALITY OF KINGSTON
ZONING HEARING BOARD and
The Municipality of Kingston.

Commonwealth Court of Pennsylvania.

Argued June 7, 2001.

Decided May 30, 2002.

Carl Max Janavitz, Pittsburgh, for appellants.

Harry P. Mattern, Kingston, for appellees.

Before T. DOYLE, Senior Judge,[1] COLINS, President Judge, and MIRARCHI, Senior Judge.

OPINION BY Senior Judge DOYLE.

Jay–Lee, Inc. (Jay–Lee), Four G. Corp., Inc. (Four G) and Jules Greenberg (collectively, Appellants) appeal from an order of the Court of Common Pleas of Luzerne County that denied their appeal and affirmed the decision of the Zoning Hearing Board (ZHB) of the Municipality of Kingston (Kingston), which upheld a zoning officer's denial of Appellants' application for an occupancy permit and struck down Appellants' challenge to the Kingston Municipal Zoning Ordinance (Ordinance).

Jules Greenberg owns the property located at 481 Market Street in Kingston, Luzerne County. After Greenberg purchased the property in 1977, he operated a restaurant and lounge, which served alcoholic beverages under a permit issued by the Pennsylvania Liquor Control Board (PLCB). In 1980, he obtained an amusement permit, which allowed, for the first time, the use of live and recorded music on the premises. In 1985, Four G was incorporated and became the sole tenant of the premises. Four G obtained a license from the PLCB in 1993 and began to provide female dancers who, in compliance with PLCB regulations, were clad with "pasties" and "G-strings." The name of the establishment was then changed to "Le Cabaret." After Le Cabaret began operations, Kingston enacted Ordinance No. 1993–12, which became effective in December 1993.[2] Ordinance No. 1993–12 was Kingston's first attempt to regulate "adult entertainment." Section 181–17(B)(4) of the Ordinance sets forth certain prohibited acts, and provides in pertinent part:

> (a) It shall be unlawful for any person or persons who own, operate, lease, manage or control ... or conduct any adult business to:
>
> ▪ Transact business without possessing a valid club permit; or
>
> ▪ Own, operate or conduct business that is located within one thousand (1,000) feet of the following:

1. This case was assigned to the opinion writer prior to the date when President Judge Doyle assumed the status of senior judge on January 1, 2002.

2. Ordinance No. 1993–12, entitled in part as an ordinance "Regulating the operation of bring your own bottle clubs and adult businesses," amended the existing Ordinance by adding Section 181–17(B), which relates to adult entertainment special exception uses.

[a]   A church.

[b]   A public or private elementary or secondary school.

[c]   A nursery school, kindergarten, child-care center, day nursery or day care center.

[d]   A university, college, vocational or business school.

[e]   A boundary of any residential district.

[f]   A public park adjacent to a residential district.

[g]   The property line of a lot devoted to any residential use.

Kingston Code § 181–17(B)(4).   The phrase "conduct any adult business" is defined in Section 181–17(B)(2) of the Ordinance to include any instance where a person "(c) Delivers or provides to any customer any ... entertainment ... on the adult business premises." "Entertainment" is defined as:

Any act or performance, such as a play, skit, reading, revue, pantomime, scene, song, dance, musical rendition or striptease, whether performed by employees, agents, contractors or customers.   The term "entertainment" shall also mean bartenders, waiters, waitresses or other employees exposing "specified anatomical areas" or engaging in "specified sexual activities" in the presence of customers.

Kingston Code § 181–17(B)(2).[3]   This section further defines "specified anatomical areas" as "(a) Less than completely and opaquely covered human genitals, pubic region, buttocks or female breast below a point immediately above the top of the areola. (b) Human male genitals in a discernibly turgid state, whether or not covered."   Section 181–17(B)(2) also defines "specified sexual activities" as: "(a) Human genitals in a state of sexual stimulation or arousal. (b) Acts of human masturbation, sexual intercourse or sodomy. (c) Fondling or other erotic touching of human genitals, pubic region, buttock or female breast."

Section 181–17(B)(3) provides that certain uses, including "[a]ny cabaret, club or tavern offering any entertainment showing specified sexual activities or specified anatomical areas," shall only be permitted as special exception uses in the zoning districts designated as C–3 and M–1.   Kingston Code § 181–17(B)(3).   The district designated as C–3 refers to a general commercial zone; the M–1 district is an area zoned for manufacturing uses.   The premises at issue are located in a C–3 zoning district.   Totally nude dancing had not been offered at any time on the premises either before or after the enactment of Ordinance No. 1993–12.

On June 21, 1999, the PLCB informed Four G that it had granted its request to "delicense" the front portion of the premises so that it would not have to comply with PLCB regulations.   Four G then leased that front portion of the premises to Jay–Lee, a corporation wholly owned by Greenberg, but the rear portion of the premises continued to be leased by Four G.   On July 27, 1999, Jay–Lee applied to Kingston for an occupancy permit in order to use the entire premises as an "Adult Entertainment Center," offering totally nude entertainment.[4]   By letter dated October 6,

---

**3.**   The Ordinance also defines "Adult Entertainment Club" as: "A cabaret which features go-go dancers, exotic dancers, strippers, male or female impersonators or similar entertainers.   (Note: This is an exception to the sexual activities/anatomical area rules.)"   Section 181–17(B)(2).

**4.**   PLCB regulations do not permit totally nude dancing in licensed premises.   Greenberg testified that he had only intended to

1999, Kingston denied the application on the grounds that Jay–Lee had not obtained a special exception and the requested use was prohibited by the Ordinance, specifically Section 181–17(B)(4).

On appeal to the ZHB from Kingston's denial of the occupancy permit, Greenberg and Four G joined in a request to obtain a permit, arguing that totally nude dancing should be allowed because it is essentially the same as the use which predated the enactment of Ordinance No. 1993–12, i.e., dancing with "pasties" and a "G-string." Appellants also challenged the validity of Ordinance No. 1993–12. The ZHB denied the appeal, holding that Kingston properly denied Appellants' occupancy permit because the premises in dispute never in the past had been the site of entertainment showing "specified anatomical areas" or "specified sexual activities" as defined by Section 181–17(B)(2) of the Ordinance and that, to the contrary, Appellants had always operated within the constraints that the PLCB placed on the business. The ZHB also rejected Appellants' argument that Section 181–17(B) of the Ordinance was constitutionally invalid because it allegedly failed to allow totally nude dancing anywhere in Kingston. On appeal,[5] the Court of Common Pleas of Luzerne County, after considering the record, briefs, and arguments of counsel, affirmed the decision of the ZHB. Appellants bring the instant appeal.

■ First, Appellants argue that totally nude dancing is similar to dancing with "pasties" and a "G-string" and that totally nude dancing is, therefore, a preexisting nonconforming use of the premises. Kingston counters by arguing that totally nude entertainment is not similar to "scantily clad" entertainment and that Appellants are not entitled to an occupancy permit for totally nude entertainment.[6]

■ Section 107 of the Pennsylvania Municipalities Planning Code (MPC),[7] 53 P.S. § 10107, defines a nonconforming use as follows:

a use, whether of land or of structure, which does not comply with the applicable use provisions in a zoning ordinance or amendment heretofore or hereafter enacted, where such use was lawfully in existence prior to the enactment of such ordinance or amendment, or prior to the application of such ordinance or amendment to its location by reason of annexation.

The Pennsylvania Supreme Court has held that, in order to qualify a proposed use as a preexisting nonconforming use, the proposed use must be sufficiently similar to

request a Certificate of Occupancy for the front portion of 481 Market Street, not the whole premises. (Notes of Testimony, N.T., Hearing of February 8, 2000, Testimony of Jules Greenberg at 44).

5. Appellants filed an appeal with the Prothonotary of the Court of Common Pleas of Luzerne County on May 18, 2000.

6. In zoning appeals where, as here, the trial court has taken no additional evidence, this Court's standard of review is limited to determining whether the zoning hearing board committed an abuse of discretion or an error of law. Money v. Zoning Hearing Board of Haverford Township, 755 A.2d 732 (Pa. Cmwlth.2000); see also Baker v. Chartiers Township Zoning Hearing Board, 677 A.2d 1274 (Pa.Cmwlth.1996), petition for allowance of appeal denied, 547 Pa. 738, 690 A.2d 238 (1997). A conclusion that the zoning hearing board abused its discretion may be reached only if the zoning hearing board's findings are not supported by substantial evidence. Baker. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Bailey v. Upper Southampton Township, 690 A.2d 1324 (Pa.Cmwlth.1997).

7. Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§ 10101–11202.

the preexisting nonconforming use so as not to constitute a new or different use. *Limley v. Zoning Hearing Board of Port Vue Borough*, 533 Pa. 340, 625 A.2d 54 (1993). The proposed nonconforming use need not be identical to the preexisting nonconforming use; all that is required is similarity in use. *Id.*

In the instant case, in order to determine whether the use of totally nude entertainment is a preexisting nonconforming use, we must decide whether totally nude entertainment is similar to scantily clad entertainment. Appellants argue that Four G provided adult entertainment on the premises in the form of live female dancers attired in pasties and G-strings in compliance with PLCB regulations. Appellants contend that, when it originally did so, the Ordinance contained no restrictions, rules or regulations on adult businesses. Appellants assert that, since totally nude entertainment could have been provided prior to the enactment of Ordinance No. 1993–12, totally nude entertainment should be permitted under the present Ordinance as a continuation of a nonconforming use. In addition, they contend that adult entertainment in the form of exotic dancers and strippers has been provided on the premises since early 1993 and that the proposed use by Jay–Lee still involves strippers and exotic dancers but without pasties and G-strings, a distinction which Jay–Lee contends is "at best a hair splitting difference." (Appellant's Br. at 14). Basically, Appellants

would have us hold that a prior *potential use* is the same, or sufficiently similar, as the requested use. We decline to do so and adopt the correct, proper analysis to apply in this case, which is to determine whether totally nude dancing is sufficiently similar to dancing with "pasties" and a "G-string."

Courts in the past have addressed this question, *viz.*, whether totally nude dancing is sufficiently similar to dancing with "pasties" and a "G string," albeit the analyses have been made in the context of interpreting different statutes. In *Purple Orchid, Inc. v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, 721 A.2d 84 (Pa.Cmwlth.1998), *petition for allowance of appeal granted*, 559 Pa. 724, 740 A.2d 1150 (1999), this Court decided whether female entertainers, who appeared to be bare-breasted but who "covered" their breasts with a substance that appeared to be transparent when dry, were providing entertainment that was "lewd, immoral or improper" as defined by the Pennsylvania Liquor Code. In that case, we distinguished between total nudity and partial coverage and found that the entertainment offered had violated the statute.[8]

Furthermore, in *City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), the United States Supreme Court addressed the constitutionality of a public indecency ordinance that prohibited entertainers from performing in

---

**8.** As Kingston notes in its brief at page 6, courts have made a distinction between totally nude and partially clothed entertainers in the context of public indecency ordinances. In *D'Angio v. Borough of Nescopeck*, 34 F.Supp.2d 256 (M.D.Pa.1999), the United States District Court for the Middle District of Pennsylvania upheld a borough ordinance that prohibited nudity in public places. In that case, the Court recognized the distinction made in *Barnes v. Glen Theatre, Inc.*, 501 U.S.

560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), between dancers having to wear G-strings and pasties as opposed to totally nude entertainers. The Court thus found that performing totally nude could be constitutionally prohibited, but that dancing with G-strings and pasties is an exercise of free expression. Although the *D'Angio* court made this distinction in a different context of interpreting a public indecency ordinance, the distinction still remains viable here.

a "state of nudity" as opposed to dancing with "pasties" and a "G-string." In that case, the City of Erie, Pennsylvania, had enacted an ordinance that prohibited one from knowingly or intentionally appearing in public in a "state of nudity." *Id.* at 283, 120 S.Ct. 1382, 146 L.Ed.2d 265. The Supreme Court determined that the Erie ordinance prohibiting public nudity was aimed at combating crime and other negative secondary effects caused by the presence of adult entertainment establishments and not at suppressing the erotic message conveyed by the nude dancing at issue in that case. The Court stated: "[E]ven if Erie's public nudity ban has some minimal effect on the erotic message by muting that portion of the expression that occurs when the last stitch is dropped, the dancers at Kandyland and other such ['bottle club'] establishments are free to perform wearing pasties and G-strings. Any effect on the overall expression is *de minimis.*" *Id.* at 294, 120 S.Ct. 1382, 146 L.Ed.2d 265. The Supreme Court concluded that Erie's interest in combating the negative secondary effects associated with adult entertainment establishments was unrelated to the suppression of the erotic message conveyed by nude dancing. The Supreme Court of the United States distinguished between totally nude and partially clothed entertainers and upheld the ordinance as a constitutional exercise of municipal control.

We, therefore, hold that totally nude entertainment is not sufficiently similar to entertainment offered with "pasties" and a "G string" so as to allow totally nude entertainment on the premises as a preexisting nonconforming use. In this appeal, since Appellants propose to offer totally nude entertainers who would exhibit the "specified anatomical areas," as defined by the Ordinance, they would be required to obtain a special exception.

█ Next, Appellants contend that Section 181–64(B) of the Ordinance [9] violates the United States Constitution [10] and the Pennsylvania Constitution [11] on its face and as applied [12] because the Ordinance fails to provide time constraints on a zoning officer's action on a permit application,

9. Section 181–64 of the Ordinance concerns occupancy permits for new uses and for existing uses. The relevant portion of the Ordinance concerning existing uses, Section 181–64(B), provides, in part, as follows:

> (1) Upon written request from the owner, tenant or occupant, the Zoning Officer, after inspection, shall issue an occupancy permit for an existing use legally existing at the time this chapter is made effective, certifying the extent and kind of use and whether any such existing use conforms with the provisions of this chapter.
> (2) No change or extensions of use and no alterations shall be made in a nonconforming use or premises without an occupancy permit having first been issued by the Zoning Officer stating that such change, extension or alteration is in conformity with the provisions of this chapter.

10. The First Amendment to the United States Constitution provides, in pertinent part, as follows: "Congress shall make no law ... abridging the freedom of speech, or of the press ...." U.S. CONST.Amend. I.

11. The Pennsylvania Constitution provides the following: "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty...." PA. CONST. Art. I, § 7.

12. Appellants do not bear out their argument in their brief that the Ordinance violates the United States and Pennsylvania Constitutions "as applied." Nevertheless, in the case at bar, Appellants applied for an occupancy permit on July 27, 1999, and Kingston issued a decision letter denying the request for an occupancy permit on October 6, 1999, seventy-one days after the application for a certificate of occupancy was filed. Kingston's decision was timely issued and, in this respect, the Ordinance is not constitutionally violative as applied. *See infra* note 13.

and thus acts as a prior restraint on speech. Moreover, they contend that the Ordinance is unconstitutional because it lacks a provision for prompt "judicial" review of a zoning officer's decision to deny an occupancy permit. They further assert that, since the Ordinance does not address how and where an appeal from a zoning officer's determination may be filed, this omission in the Ordinance acts to stifle expression of speech. Particularly, on this issue, Appellants contend that legal counsel for Jay–Lee wrote to various municipal officials, including the zoning officer, requesting an application to appeal to the ZHB but that the failure to provide him with the requested appeal form stifled Appellants' expression.

■ Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Thus, where a licensing scheme creates a "risk of delay," such that " 'every application of the statute create[s] an impermissible risk of suppression of ideas,' " the United States Supreme Court has permitted parties to bring facial challenges. *Id.* at 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (quoting *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 797, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)).

■ While prior restraints are not unconstitutional *per se,* any system of prior restraint bears a heavy presumption against its constitutional validity. *FW/PBS,* 493 U.S. at 224, 110 S.Ct. 596, 107 L.Ed.2d 603. The United States Supreme Court, in addressing prior restraints, has identified two scenarios that will not be tolerated. First, a licensing scheme that places unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship. *Id.* at 224–25, 110 S.Ct. 596, 107 L.Ed.2d 603. For example, an ordinance that makes the peaceful enjoyment of constitutionally-guaranteed freedoms contingent upon the uncontrolled will of an official by requiring a permit or license which may be granted or withheld in the discretion of such official, is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms. *Id.* at 226, 110 S.Ct. 596, 107 L.Ed.2d 603. Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is not permissible. *Id.*

There is no dispute that Section 181–64 of the Ordinance, which provides for the issuance of occupancy permits, does not have a provision that sets forth time limits within which the zoning officer must decide whether to grant or deny an occupancy permit upon application. However, Section 1 of the Act of July 9, 1976, P.L. 919, *as amended,* 53 P.S. § 4104,[13] pro-

---

**13.** Section 4104(a) provides, in pertinent part, as follows:

A municipality which regulates the ... operation ... of buildings, structures or devices by means of an ordinance requiring the filing of an application, the payment of a fee and the issuance of a permit shall render a decision either approving or disapproving the application for a permit within 90 days after the application is filed unless the ordinance requires a decision within a lesser period of time, provided that any disapproval of the application shall be issued within said 90–day period containing a brief explanation setting forth the reasons for said disapproval and the manner in which the application can be corrected and/or modified to obtain the required approval. If no decision is rendered on the application within 90 days, the application shall be deemed to be approved and the permit shall be deemed to have been granted immediately....

53 P.S. § 4104(a).

vides a period of ninety days within which a municipality must act to approve or disapprove an application for a permit regulating the operation of building.[14] Therefore, since there was a time limit within which the zoning officer was required to issue the permit, we hold that the Ordinance does not place an unconstitutional prior restraint on speech when the Ordinance is read in conjunction with 53 P.S. § 4104.[15]

■ With regard to Appellants' contention that the Ordinance contains no provision directing *where* an appeal may be filed, Section 181–62(E) provides as follows: "All appeals from decisions of the Zoning Officer shall be taken in the manner set forth in this chapter and as otherwise prescribed by the [MPC]." Kingston Code § 181–62(E) (footnote omitted). Section 615 of the MPC, 53 P.S. § 10615, provides the following: "All appeals from decisions of the zoning officer shall be taken in the manner set forth in this act." Section 909.1 of the MPC, 53 P.S. § 10909.1, addresses who has jurisdiction over an appeal from a zoning officer's decision. That section provides, in pertinent part, as follows: "The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters ... (3) Appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit...." Since the MPC specifically provides that the zoning hearing board has exclusive jurisdiction over all appeals from a zoning officer's denial of a permit, we reject Appellants' argument and hold that Section 181–64(E), in conjunction with the MPC, provides for adequate procedural safeguards for review of a zoning officer's decision.

Finally, Appellants argue that the Ordinance violates the United States Constitution and the Pennsylvania Constitution in that it fails to provide for any location in Kingston for the establishment of adult entertainment uses. Kingston argues that a videotape of every C–3 and M–1 zone in the municipality, submitted by Appellants, was the only evidence submitted on this issue and that it is insufficient to establish that the Ordinance has effectively "zoned out" Appellants' intended use.

Before the ZHB, Jules Greenberg did introduce a videotape that he took while supposedly driving by every C–3 and M–1 zone in Kingston. He testified that nowhere in the C–3 and M–1 zones was there an area that was developed or that could be developed as an adult entertainment establishment without violating the distance constraints found in Section 181–17(B)(4) of the Ordinance. The solicitor for Kingston, Harry P. Mattern, Esq., objected to the videotape on the ground that it was irrelevant since there was no evidence, such as the testimony of a surveyor,

---

**14.** The note following 53 P.S. § 4104 indicates that Section 1102 of Act 1999–45, the Pennsylvania Construction Code Act, repeals 53 P.S. § 4104, effective 90 days following the publication of notice in the Pennsylvania Bulletin that the regulations required by Act 1999–45 have been finally adopted. A review of the Pennsylvania Bulletin from the effective date of Act 45 of 1999 to the present reveals that the regulations required by Act 45 have never been proposed, let alone finally adopted; therefore, the repeal of 53 P.S. § 4104 has never been effective.

**15.** We need not determine whether the zoning officer's decision was timely herein, since Appellants have not raised that issue on appeal; however, we note that, pursuant to 53 P.S. § 4104, Kingston had until October 25, 1999, to approve or disapprove the application for the occupancy permit and, therefore, the zoning officer's decision, dated October 6, 1999, was rendered in a timely manner.

which established the distances portrayed on the tape. The ZHB considered this evidence and found that Appellants did not submit sufficient proof that the Ordinance fails to provide a zone for an adult entertainment center in which nude dancing may occur. We agree and hold as a matter of law that Appellants submitted insufficient evidence to establish a violation of either the United States or the Pennsylvania Constitutions.

Accordingly, we affirm.

Judge FRIEDMAN did not participate in the decision in this case.

### ORDER

AND NOW, this *30th* day of *May*, 2002, the order of the Court of Common Pleas of Luzerne County, at No. 3464–C of 2000, is hereby affirmed.